IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CEDRIC DUPREE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. **02-1059 - DRH** |
| | ) |
| **EARLY LASTER, et al.,** | ) |
| | ) |
| Defendants. | ) |

**REPORT and RECOMMENDATION**

This Report and Recommendation is respectfully submitted to District Judge David R. Herndon pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is defendants' Motion for Summary Judgment, filed by defendants Don Sanford, Christopher Waltz, Eldon Kennel, Stephen Mote, Guy Pierce, Roger E Walker, Jr, Early Laster, David Kappler, Donald Snyder, Jr, Richards Hammonds, Rick Sutton.  **(Doc. 188)**.[1]  Defendants filed a memorandum in support, along with a number of exhibits.  **(Doc. 189)**.  Plaintiff, who is represented by counsel, filed a memorandum in opposition, supported by his own exhibits.  **(Doc. 191)**.

Plaintiff is an inmate in the custody of the IDOC.  Plaintiff is suing under 42 U.S.C. §1983 for violations of his First Amendment right to practice his religion.  He also asserts claims for violation of his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, et seq., commonly referred to as "RLUIPA."  The complaint was dismissed on preliminary review; the Seventh Circuit reversed and remanded in August, 2004.  **See, Doc. 13**.

---

[1]Although Snyder joins in the motion, all claims were previously dismissed as to him on statute of limitations grounds.  **Doc. 165, p. 13.**

1

Thereafter, a series of attorneys was appointed to represent plaintiff. Each attorney has sought and received leave to withdraw. **See, Docs. 31, 48, 131, and 135.** Present counsel was appointed on July 6, 2006. **See, Doc. 136.**

Defendants moved to dismiss in part on statute of limitations grounds. The court granted defendants' motion to dismiss in part, and dismissed some of plaintiff's numerous claims on that basis. **See, Doc. 165**. After that ruling, the following claims remain pending:

**Count 1** - Section 1983 claim against Early Laster for banishing plaintiff from all prison church and religious services while at Danville Correctional Center in 1992.

**Count 4** - claim against Biggerstaff, who has a pending motion to set aside default, for issuing a disciplinary report against plaintiff for having a Bible on his person. This allegedly occurred at SWICC, on May 17, 1999. Plaintiff claims that his rights under the First Amendment and the RLUIPA were violated, although this obviously predates the effective date of RLUIPA (September 22, 2000).

**Count 8**[2] - claims against Sutton, a prison chaplain, for denying plaintiff access to church services at Pinckneyville Correctional Center. Plaintiff was at Pinckneyville from May 24, 2000, to October 30, 2002. His claims under Section 1983 arising on or after October 7, 2000, and his claims under RLUIPA arising on or after September 22, 2000 are pending.

**Count 10** - claims against Jethroe, a volunteer chaplain, who has not entered and has not moved for summary judgment, for filing a disciplinary report against plaintiff on September 7, 1999, charging him with disrupting a Bible study class at SWICC and disagreeing with Jethroe regarding religious matters. Plaintiff claims that his rights under the First Amendment and RLUIPA were violated, although this obviously predates the effective date of RLUIPA (September 22, 2000.)

**Count 11** - claims against Waltz under Section 1983 and RLUIPA. Plaintiff alleges that Waltz, who was a supervisor in the dietary unit, issued a disciplinary report on January 28, 2003, charging plaintiff with disobeying a direct order forbidding him from praying; Waltz assigned plaintiff to tedious tasks in the dietary unit because of plaintiff's practice of his religion, refused to allow plaintiff to leave work when he became ill and vomited, and "showed a pattern of abuse" towards plaintiff and was out to get plaintiff because of plaintiff's faith. This occurred at Lawrenceville, where plaintiff was incarcerated from October 22, 2002 to March 21, 2003.

---

[2]Doc. 165 refers to this count as number VII. This is an error. Count VII is directed to defendant Grote.

**Count 12** - claims against Pierce under Section 1983 claims arising on or after December 6, 2003, and under RLUIPA claims arising on or after December 6, 2001. Plaintiff claims that, during his time at Pinckneyville (May 24, 2000, to May 22, 2002) Pierce, who was the assistant warden for operations, approved an order barring Dupree from chapel services. He also alleges that, during his time at Pontiac (May 22, 2002, to October 20, 2002, and from March 21, 2003, to the present) Pierce, who became the warden at Pontiac in 2003, "knowingly allowed" plaintiff to go without access to a chaplain or to church services since August, 2003. The court notes that Pierce is no longer the warden at Pontiac. In addition, Pierce "knowingly allowed assaults on Dupree to go unaddressed" in October, 2004. The assaults, which were encouraged by officers who are not defendants herein, were allegedly undertaken by other inmates. The officers who are not defendants encouraged the assaults and denied plaintiff medical treatment in retaliation for this litigation.

**Count 13** - claims under Section 1983 and RLUIPA against Mote, who was warden at Pontiac, for approving rules and regulations that prohibited Dupree from meeting with chaplains or attending chapel services. Dupree alleges that Mote became Warden in July, 2002, and that Dupree was at Pontiac May 22, 2002, to October 20, 2002, and from March 21, 2003, to the present. In Count 12, Dupree alleges that Pierce became warden at Pontiac in 2003, so the events involving Mote apparently occurred sometime from July, 2002 to sometime in 2003. Per Doc. 165, the Section 1983 claims arising on or after December 6, 2003 and all RLUIPA claims are not time-barred and therefore remain pending.

**Count 14**[3] - plaintiff alleges that Kennell was assigned to provide chaplain services at Pontiac, and that Dupree filed a grievance on September 17, 2004, in which he complained that the chaplain was not walking the galleries in "South Mental." After that, Kennel "refused to provide religious services in violation of plaintiff's First Amendment right and the RLUIPA.

**Count 15** - plaintiff alleges that Walker, who has been Director of the IDOC since May 1, 2003, has "endorsed administrative policies" at Pontiac Correctional Center which have denied plaintiff the right to attend group worship and denied plaintiff chaplain visits and religious counseling. Per Doc. 165, Section 1983 claims against Walker arising on or after December 6, 2003, and all RLUIPA claims are not time-barred and therefore remain pending.

### Standard for Summary Judgment

In preparing this Report and Recommendation, the court has applied the familiar standard for summary judgment, that is, summary judgment is appropriate where "the pleadings,

---

[3]The amended complaint contained two counts labeled as "Count 13." In his order on the motion to dismiss, Judge Herndon renumbered the counts after the first "Count 13" as set forth above.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The Court must construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party. **See,** *Anderson v. Liberty Lobby Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)**.

Once the moving party has produced evidence to show that it is entitled to summary judgment, the nonmoving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir.1996).** In responding to a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in the pleadings. "The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).**

A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247, 106 S.Ct. at 2510**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or

unnecessary facts do not preclude summary judgment.  *Clifton v. Schafer*, 969 F. 278, 281 (7th Cir. 1992).

### Inmate's Rights to Practice Religion

Dupree's claims must be analyzed under both the First Amendment and the Religious Land Use and Institutionalized Persons Act.  42 U.S.C. §§ 2000cc, et seq.

Although prisoners retain their First Amendment right to the free exercise of religion, prison officials may enforce policies and regulations which limit the exercise of religious practices.  "To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987).  Prison regulations or policies that impinge on an inmate's First Amendment rights are valid if they are reasonably related to a legitimate penological interest.  *Shaw v. Murphy*, 532 U.S. 223, 223, 121 S. Ct. 1475, 1476  (2001);  *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).

"[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection."  *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1429 (1981).  At the same time, prisoners' constitutional rights may be restricted by the fact of confinement and the needs of the penal institution.  *See Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-2538  (1977).  "A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his

religion." **Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir. 1996).** "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests. **Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005)**. Whether other avenues remain available for the exercise of the asserted right is one of the key tests of "reasonableness." **Turner, 482 U.S. at 90.**

The RLUIPA is more expansive than the First Amendment. In its unpublished order remanding this case, the Seventh Circuit explained the scope of the RLUIPA as follows:

> The RLUIPA "prohibits governments from substantially burdening a prisoner's exercise of religion, even by a rule of general applicability, unless that burden is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000cc-1(a).FN1 RLUIPA's restraints on prison administrators go beyond the protection afforded inmates by the Free Exercise Clause of the First Amendment, which requires only that an infringing practice be "reasonably related to a legitimate penological objective." Tarpley v. Allen County, Ind., 312 F.3d 895, 898 (7th Cir.2002). See also *505 Lindell v. McCallum, 352 F.3d 1107, 1110 (7th Cir.2003); Charles v. Verhagen, 348 F.3d 601, 604-05 (7th Cir.2003). RLUIPA also defines "religious exercise" more broadly then does traditional First Amendment jurisprudence. See 42 U.S.C. § 2000cc-5(7) ("The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 760 (7th Cir.2003) (discussing the difference between the two meanings of "religious exercise")."

**Dupree v. Laster, 106 Fed.Appx. 503, 504-505, 2004 WL 1729844, *1 (7th Cir. 2004).**

### Analysis

Defendants present their arguments in a general fashion, not directed to the specific counts that remain pending. In many respects, their arguments are cursory and ignore many of the allegations of the amended complaint.

### Legitimate Penological Interests

Defendant argue that they are entitled to summary judgment because their actions were

based on legitimate penological interests.

As plaintiff points out, this assertion goes only to liability for violation of the First Amendment.  Under RLUIPA, the defendants many not burden plaintiff's exercise of his religion unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §2000cc-1(a). Maintaining the safety and security of a prison is, of course, a compelling governmental interest, and RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety."  **Cutter v. Wilkinson, 544 U.S. 709, 722, 125 S.Ct. 2113, 2122 (2005)**.  No matter how fervently Mr. Dupree believes that he is called to witness to other inmates, for example, RLUIPA does not require prison authorities to allow him free rein to do so whenever, however, and wherever he chooses to.  The motion must fail on this point, though, because defendants make no attempt at all to demonstrate that the measures taken against plaintiff, for example, barring him from all access to religious services, were the least restrictive means of furthering the compelling governmental interest of maintaining safety and security.

Secondly, as to both the First Amendment and RLUIPA claims, there are obvious issues of material fact which preclude summary judgment.  For instance, defendants assert generally that plaintiff "was denied access to religious services because he was disruptive."  **Doc. 189, p. 4.**  They cite to their exhibits F and H in support.  Those exhibits concern occasions on which plaintiff disrupted services in 1992 and 1999.  Exhibit F relates to an order issued by Early Laster in November, 1992, banning plaintiff from religious services because of his disruptive behavior, which included being "confrontational" with volunteers.  Exhibit H is a letter, dated September 4, 1999,  from Karen Jethroe of Inner Circle Ministries requesting that Dupree not be

allowed to attend bible study sessions put on by that group; she states that Dupree makes "dogmatic and insensitive responses in class," makes condescending remarks, and brings an overall negative presence" to the class which had prompted some other inmates not to attend. Plaintiff counters with his own affidavit, Exhibit 7 to **Doc. 191**, in which he states that he has been denied access to religious services for the "last several years" and was still being denied as of the date of the affidavit, January 31, 2007.  There are material issues of fact as to whether the disruptive behavior which took place in 1992 and 1997 justifies banning plaintiff from all religious services for years afterwards.  Further, plaintiff claims that he has also been denied any type of chaplain visits or religious counseling services.  Defendants make no attempt to explain how disruptive behavior in a group setting would justify denial of all contact with a chaplain years later.

     Lastly, defendants' arguments simply ignore many of the pending allegations.  For instance, with regard to the claim against Waltz, they argue that Waltz is entitled to judgment because he did not discipline plaintiff for praying, but for "unauthorized organizational activity." **Doc. 189, p. 5**.  Aside from the obvious factual dispute here, plaintiff's claim against Waltz, set forth in Count 11, encompasses much more than the issuance of the disciplinary report.  Plaintiff claims that Waltz assigned plaintiff to tedious tasks in the dietary unit because of plaintiff's practice of his religion, refused to allow plaintiff to leave work when he became ill and vomited, and "showed a pattern of abuse" towards plaintiff, allegedly because he was out to get plaintiff because of plaintiff's faith.

### RLUIPA Damages Against Defendants in Individual Capacities

Defendants make two related arguments about damages. They argue that plaintiff cannot recover damages against defendants in their individual capacities under the RLUIPA, and that plaintiff is precluded from recovering compensatory damages under RLUIPA because he has not alleged a physical injury. They note that there are no circuit court cases on these precise questions.

42 U.S.C. §2000cc-2(a) states "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." Section 2000cc-5(4)(a)(iii) defines government to include "any other person acting under color of State law." Thus, plaintiff can obtain "appropriate relief" from individuals who were acting under color of state law. Unfortunately, the statute does not define "appropriate relief."

Judge Pallmeyer in the Northern District considered this question in *Agrawal v. Briley*, **2006 WL 3523750 (N.D.Ill., December 6, 2006)**. That opinion includes a comprehensive review of the case law on the issue. Judge Pallmeyer concluded that, while money damages are recoverable against individual defendants under RLUIPA, 42 U.S.C. §1997e operates to preclude compensatory damages based solely on mental or emotional injury.

This court agrees with Judge Pallmeyer's conclusion. RLUIPA clearly allows plaintiff to recover damages from individual defendants acting under color of state law. *Agrawal*, **at \*10-11**. RLUIPA authorizes a private cause of action in which "a person" may "obtain appropriate relief." 42 U.S.C. §2000cc-2(a). In contrast, subsection 2(f) of that same section authorizes the United States to bring an action for "injunctive or declaratory relief." If damages are not allowed in the private action, there would be no reason to differentiate between the private and government causes of action in this manner. Secondly, the statute defines government as

9

including "any other person acting under color of State law." §2000cc-5(4)(A)iii.  This would be mere surplusage if damages are not recoverable against individual defendants, as subsection 5(4)(A)ii already authorizes claims against government officials.  Lastly, the legislative goal of RLUIPA is to give heightened protection to religious exercise.  Since damages are available against individual capacity defendants under Section 1983, it would be contrary to that purpose to suppose that "appropriate relief" under RLUIPA excludes damages.

Lastly, the Seventh Circuit suggested in **Mack v. O'Leary, 80 F.3d 1175, 1177 (7th Cir.1996), vacated on other grounds, O'Leary v. Mack, 522 U.S. 801 (1997)**, that the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq., authorized money damages against individual defendants.  RFRA was held unconstitutional as applied to state governmental units in **City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157 (1997)**, but is valid as applied to the Federal government.  **See,  O'Bryan v. Bureau of Prisons, 349 F.3d 399 (7th Cir. 2003).  City of Boerne** prompted the passage of RLUIPA, and the language regarding "appropriate relief" is the same in both statutes.  The Seventh Circuit construed that language in RFRA to mean that plaintiff could recover money damages in **Mack**.  **Mack, 80 F.3d at 1177**.  It is fair to expect that the Seventh Circuit would construe the same language in RLUIPA the same way.

However, this court agrees with defendants that 42 U.S.C. §1997e(e) applies to the claims under RLUIPA and prevents plaintiff from recovering compensatory damages "without a prior showing of physical injury."

Section 1997e(e), which is part of the Prison Litigation Reform Act, states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility,

for mental or emotional injury suffered while in custody without a prior showing of physical injury."  RLUIPA specifies that "Nothing in this chapter shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act)."  42 U.S.C. §2000cc-2(f).  Thus, the Section 1997e(e) limitation applies to claims under RLUIPA.  However, this does not mean that plaintiff cannot recover damages at all; nominal and punitive damages are not precluded.  **See, *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003).**

The amended complaint alleges that plaintiff suffered "extreme mental anguish," but does not allege any physical injury.  Plaintiff does not address the point in his response to the motion.  This court recommends that defendants be granted summary judgment on plaintiff's claims for compensatory damages because he has not alleged a physical injury.

### Personal Involvement

Defendants Snyder and Walker argue that they are entitled to judgment on the Section 1983 claims because they had no personal involvement in the events alleged by plaintiff.  The court first notes that there are no pending claims against Snyder; all claims against Snyder were dismissed on statute of limitations grounds in **Doc. 165.**  The claims against Walker are set forth in Count 15.  Plaintiff alleges that Walker has "endorsed administrative policies" at Pontiac Correctional Center which have denied plaintiff the right to attend group worship and denied plaintiff chaplain visits and religious counseling.

Plaintiff concedes that there is no respondeat superior liability under Section 1983, but argues that there can be such liability under RLUIPA.  **See, Doc. 191, p.12.**  Defendants do not argue that there is no respondeat superior liability under RLUIPA, so the court will not address that issue.

11

Walker is entitled to summary judgment on the Section 1983 claims asserted against him in Count 15.

### Qualified Immunity

Lastly, defendants argue that they are entitled to qualified immunity because they "were unaware of any established case law prohibiting them from disciplining an inmate or maintaining the safety and security of the institution." **Doc. 189, p. 10.** That argument borders on the frivolous, and require no analysis.

### Recommendation

For the foregoing reasons, this recommends that defendants' Motion for Summary Judgment **(Doc. 188)** be **GRANTED in part as follows**:

Summary judgment should be granted in favor of all defendants on the claims for compensatory damages on all pending counts.   Summary judgment should be granted in favor of defendant Roger E Walker, Jr., on the Section 1983 claims in count 15.

The motion should be **denied in all other respects**.

If these recommendations are adopted in their entirety, the following claims, for nominal and punitive damages only, will remain pending:

**Count 1** - Section 1983 claim against **Early Laster** for banishing plaintiff from all prison church and religious services while at Danville Correctional Center in 1992;

**Count 4** - claim against **Phillip Biggerstaff**, who has a pending motion to set aside default, for issuing a disciplinary report against plaintiff for having a Bible on his person.  This allegedly occurred at SWICC, on May 17, 1999.  Plaintiff claims that his rights under the First Amendment and the RLUIPA were violated, although this obviously predates the effective date of RLUIPA (September 22, 2000.)

**Count 8** -  claims under Section 1983 arising on or after October 7, 2000, and claims under RLUIPA arising on or after September 22, 2000, against **Rick Sutton** for denying plaintiff access to church services at Pinckneyville Correctional Center.

**Count 10** - claims against **Karen Jethroe**, a volunteer chaplain, who has not entered and has not moved for summary judgment, for filing a disciplinary report against plaintiff on September 7, 1999.  Plaintiff claims that his rights under the First Amendment and RLUIPA were violated, although this obviously predates the effective date of RLUIPA (September 22, 2000.)

**Count 11** - claims against **Christopher Waltz** under Section 1983 and RLUIPA.  Plaintiff alleges that Waltz, who was a supervisor in the dietary unit,  issued a disciplinary report on January 28, 2003, charging plaintiff with disobeying a direct order forbidding him from praying; Waltz assigned plaintiff to tedious tasks in the dietary unit because of plaintiff's practice of his religion, refused to allow plaintiff to leave work when he became ill and vomited, and "showed a pattern of abuse" towards plaintiff and was out to get plaintiff because of plaintiff's faith.  This occurred at Lawrenceville, where plaintiff was incarcerated from October 22, 2002 to March 21, 2003.

**Count 12** - claims against **Guy Pierce** under Section 1983 arising on or after December 6, 2003, and under RLUIPA arising on or after December 6, 2001, for approving an order barring Dupree from chapel services at Pinckneyville, and having "knowingly allowed" plaintiff to go without access to a chaplain or to church services since August, 2003, at Pontiac.  In addition, Pierce "knowingly allowed assaults on Dupree to go unaddressed" in October, 2004.

**Count 13** - claims under Section 1983 arising on or after December 6, 2003, and under RLUIPA against **Stephen Mote**, for approving rules and regulations that prohibited Dupree from meeting with chaplains or attending chapel services at Pontiac.

**Count 14** - claims under Section 1983 and RLUIPA against **Eldon Kennell** for refusing to provide "religious services" at Pontiac Correctional Center after plaintiff filed a grievance in which he complained that the chaplain was not walking the galleries in "South Mental."

**Count 15** - claim under RLUIPA only against **Roger E. Walker, Jr.**, for endorsing administrative policies at Pontiac Correctional Center which denied plaintiff the right to attend group worship and denied plaintiff chaplain visits and religious counseling.

Objections to this Report and Recommendation must be filed by **June 27, 2007.**

**Submitted:  June 8, 2007.**

                                                    s/ Clifford J. Proud
                                                    **CLIFFORD J. PROUD**
                                                    **U. S. MAGISTRATE JUDGE**